DOMBROSKI, Judge:
This case raises a question of first impression for this Court, namely whether data in the form of computer files on a laptop computer fixed disk drive can constitute military property and be the subject of destruction under Article 108, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 908.[1] We answer in the affirmative and hold that the data in this case in the form of computer files on a fixed disk drive constituted military property and were destroyed in violation of Article 108, UCMJ.
BACKGROUND
Pursuant to the terms of a pretrial agreement, the appellant pled guilty to charges alleging violation of a Department of Defense directive by using a government laptop computer for personal reasons, willfully destroying military property of a value of $600.00, namely deleting and over-writing computer files residing on the fixed disk drive of the laptop computer, and larceny of the same laptop computer, military property of a value of $2000.00, in violation of Articles 92, 108, and 121, UCMJ, 10 U.S.C. §§ 892, 908, 921. The military judge, sitting as a special court-martial, sentenced the appellant to confinement for 2 months, forfeiture of $100.00 pay per month for 4 months, reduction to pay grade E-l, and a bad-conduct discharge. The convening authority approved the sentence, but suspended execution of confinement greater than 30 days for a period of 1 year from the date the sentence was adjudged in accordance with the pretrial agreement.
Article 108, UCMJ, provides in pertinent part: “Any person subject to this chapter who, without proper authority ... willfully or through neglect damages, destroys, or loses ... any military property of the United States, shall be punished as a court-martial may direct.” Manual for Courts-Martial, United States, 1984 (1994 ed.) [MCM], part IV, ¶ 32a. The elements of this offense are as follows:
(a) That the accused, without proper authority, damaged or destroyed certain property in a certain way, or lost certain property;
(b) That the property was military property of the United States;
(c) That the damage, destruction, or loss was willfully caused by the accused or was the result of neglect by the accused; and
(d) That the property was of a certain value or the damage was of a certain amount.
MCM, ¶ 32b(2). The MCM defines military property as “all property, real or personal, owned, held, or used by one of the armed forces of the United States.” MCM, ¶ 32c(1). (Emphasis added.)
In the course of the providence inquiry, the appellant stated that he stole a Navy laptop computer system from the stateroom of the lieutenant junior grade [LTJG] supply officer on board the submarine USS ANNAPOLIS, located at Naval Submarine Base New London. Without permission or authority, he carried the computer system off the submarine and took it to his residence in order to use the laptop and its 3.5-inch floppy disk drive to transfer files from 3.5-inch disks to his own home computer which did not have a 3.5-inch disk drive. The process involved the appellant’s copying files from the 3.5-inch disks he held to the fixed disk drive of the laptop, then transferring the files from the laptop to the fixed disk drive of his home computer by a direct cable connection between the two machines. In other words, the appellant used the laptop computer as an intermediary device to move computer files from one magnetic medium to another. In order to have sufficient free fixed disk space *879 on the laptop computer to make the file transfers, the appellant intentionally removed or deleted files containing a supply management database application or program and the associated files containing the actual data.[2] The computer files containing the data were created by the supply officer himself. The appellant arrived at $600.00 as the value of the destroyed computer data files (not including the underlying application program) by multiplying an hourly rate of $10.00 for a LTJG times 60 hours — the estimated time for the LTJG to create the data.[3]
In his brief and at oral argument, the appellant contended that the deletion of the computer files amounted to an “intangible loss of intellectual property [which] falls outside the scope of Article 108.” Appellant’s Brief at 3. Further, the appellant asserted that since the deletion of the computer files in this case did not cause physical injury to any property, including the computer and its hard drive, his act neither destroyed nor damaged any military property of the United States Navy. Appellant’s Brief at 5.[4] Finally, appellant challenged the methodology he used and the military judge accepted for determining the value of the destroyed military property.
DISCUSSION
The military judge was well aware of the issue now before us, having himself raised the question “whether computer files could be the subject of destruction under Article 108 in view of their intangible nature.” Record at 5. Citing the Court of Military Appeals decisions in United States v. Ortiz, 24 M.J. 164 (C.M.A.1987) and United States v. Peacock, 24 M.J. 410 (C.M.A.), cert, denied, 484 U.S. 965, 108 S.Ct. 456, 98 L.Ed.2d 396 (1987),[5] the military judge concluded that “if destroying or altering a computer program amounts to physical injury then it appears the computer files themselves are being invested with physical properties and so could be the subject of willful destruction.” Record at 5.
*880 In Ortiz, a maintenance crew chief was tried for sabotage of an Air Force F-15 aircraft in violation of 18 U.S.C. § 2155 and for willful damage to the same aircraft in violation of Article 108, UCMJ. The evidence indicated that Ortiz had disconnected an electrical relay in the aircraft’s anti-skid system, setting off an indicator light that the pilot noticed in conducting his preflight checks. After about one and one-half hours of effort, maintenance personnel determined why the indicator light was on and reconnected the relay, making the F-15 fully operational once again.
Finding no definition of “damage” in the Code, the Court in Ortiz looked to the MCM discussion of Article 109, UCMJ. The Manual provides:
To be destroyed, the property need not be completely demolished or annihilated, but must be sufficiently injured to be useless for its intended purpose. Damage consists of any physical injury to the property.
MCM ¶ 33c(2). The Court concluded as follows:
[W]e construe “damage” in Article 108 to encompass “physical injury to the property”; and, in turn, “physical injury” includes rendering military property useless for its intended purpose even temporarily by means of disassembly, reprogramming, or removal of a component. (Emphasis added.)
United States v. Ortiz, 24 M.J. at 171.
The military judge in the case before us noted that the Ortiz case would provide a closer analogy had the appellant been charged with damaging the fixed disk drive, or the laptop computer itself, by deleting the files. He nevertheless concluded that since “Ortiz recognizes computer reprogramming as physical alteration, deletion of computer files should be regarded as physical destruction within the meaning of Article 108.”[6]
Military Property and Tangibility
Citing this Court’s recent decision in United States v. Holley, 42 M.J. 779 (N.M.Ct.Crim.App.1995), the appellant would have us find in Article 108, UCMJ, the requirement that military property must be tangible to be subject to destruction or damage. Holley was a larceny case, and this Court ruled that the act of copying the numeric codes from telephone company calling cards, without taking physical possession of the cards themselves, did not constitute larceny within the meaning of Article 121, UCMJ given the common-law background of Article 121 which included a tangibility requirement. We cited United States v. Mervine, 26 M.J. 482, 483 (C.M.A.1988) for the principle that “[a]t common law, larceny was defined as ‘the trespassory taking and carrying away of the personal property of another with intent to steal the same.’ (Citations omitted). Moreover, the common law required that the object of the larceny be tangible and capable of being possessed.”
Article 108, UCMJ, does not grow out of the same common law background. In United States v. Spradlin, 33 M.J. 870, 872 (N.M.C.M.R.1991), this Court outlined the history of Article 108, UCMJ, observing that “the Congress appears to have adopted the broad definition of military property reflected in Article of War 60 ... and in its successor Article of War 94 and Article for the Government of the Navy 14, quoted in Schelin [United States v. Schelin, 15 M.J. 218 (C.M.A.1983) ].” In Schelin, the Court of Military Appeals noted the special role of “military property” in the national defense, with either the uniquely military nature of property or the military function to which the property is employed as determining it to be “military property.” Id. at 220. See also United States v. Ford, 30 M.J. 871 (A.F.C.M.R.), petition denied, 32 M.J. 23 (C.M.A.1990).
In commenting on the definition of “military property” in paragraph 32c(l) of the MCM, the Court of Military Appeals has observed:
“Military property is all property, real or personal, owned, held, or used by one of the armed forces of the United States.” (Emphasis added.) A more inclusive defí *881 nition of military property ... is difficult to imagine.
United States v. Hemingway, 36 M.J. 349, 351 (C.M.A.1993). We find no tangibility requirement in this broad, expansive definition. The appellant stole a computer, which included a fixed disk drive containing the computer files at issue. Upon its return, the computer was no longer capable of functioning for one of its intended military purposes — that of supply management aboard the submarine. The computer had been altered or damaged through deletion or destruction of the computer program and data files.
Had this data been recorded on pieces of paper and contained in a file cabinet, there would be little question that these paper files could be the subject of destruction under Article 108, UCMJ. Computers have revolutionized data storage and retrieval, with magnetic media replacing paper in many instances. We perceive no legal distinction to be drawn under Article 108, based on the medium which contains the data.[7]
National Stolen Property Act Cases
In support of a tangibility requirement under Article 108, UCMJ, the appellant also cites United States v. Brown, 925 F.2d 1301 (10th Cir.1991). In Brown, the defendant was charged with violations of the National Stolen Property Act, 18 U.S.C. §§ 2314, 2315. The district court dismissed the indictment on the ground that the alleged stolen property, a computer program in source code form, was not within the reach of the statute. The court reasoned that the computer program was intangible intellectual property that did not comprise “goods, wares, merchandise, securities or monies” within the meaning of the statutory language. Citing the United States Supreme Court decision in Dowling v. United States, 473 U.S. 207, 105 S.Ct. 3127, 87 L.Ed.2d 152 *882 (1985),[8] the Court held that § 2314 applies only to physical “goods, wares or merchandise.” Computer programs, as intangible intellectual property, fall outside the reach of the statute. However, the Court noted that Dowling cited with approval cases which involved application of § 2314 to theft of intellectual property when it occurred in conjunction with theft of tangible media, thereby permitting consideration of the intangible component for valuation purposes. Brown, 925 F.2d at 1307 n. 14. The broad holding in Brown was limited in a subsequent 10th Circuit case, United States v. Lyons, 992 F.2d 1029, petition for rehearing denied, 997 F.2d 826 (10th Cir.1993). In Lyons, the defendant was convicted under § 2314 of transporting stolen property across international borders and transporting stolen equipment across state lines. The defendant had stolen UNI-SYS computer equipment while working at a UNISYS facility in England. After the FBI had seized the equipment, a search of the contents of the hard disks disclosed that they contained proprietary UNISYS software. In applying the sentencing guidelines, the trial court calculated the total value of the stolen property at $292,000 ($27,000 for the hardware and $265,000 for the software). The defendant argued that Brown precluded consideration of the value of the software even if the defendant did steal it. The Court of Appeals responded:
The fact that Mr. Lyons stole the software in conjunction with the theft of tangible hardware distinguishes this case from Brown. Brown recognizes that the theft of intangible intellectual property in conjunction with the theft of tangible property falls within the ambit of § 2314. Id. at 1307-08 n. 14. Unlike the present case, there was no evidence in Brown that defendant was involved in the physical theft or transportation of stolen tangible property.
Lyons, 992 F.2d at 1033. See also United States v. Riggs, 739 F.Supp. 414 (N.D.Ill. 1990), discussed at footnote 7 of this opinion.
These National Stolen Property Act cases do not aid the appellant in establishing a tangibility requirement under Article 108, UCMJ. The property definition is much more expansive for purposes of Article 108, UCMJ. Further, the stolen property act cases cited demonstrate that the courts will include intangible property under the act when tied to tangible property and when the intangible property possesses some business value.
Valuation
With regard to valuation, the appellant testified in response to the military judge’s questions during the providence inquiry that he arrived at a valuation of $600.00 for the files he destroyed by taking a LTJG’s pay and dividing by 52, then dividing by 40 to arrive at an hourly rate of pay of $10.00.[9] Next he multiplied the hourly rate by 60 hours — the time it took to create the database files. The LTJG was the submarine’s supply officer, and he had himself created the database files in the supply management program. The appellant further indicated *883 that the valuation methodology applied only to the time required to create the data files and did not include the underlying supply management application program.
Paragraph 32c(3) of the MCM provides as follows:
Value and damage. In the case of loss, destruction, sale, or wrongful disposition, the value of the property controls the maximum punishment which may be adjudged. In the case of damage, the amount of damage controls. As a general ride, the amount of damage is the estimated or actual cost of repair by the government agency normally employed in such work, or the cost of replacement, as shown by government price lists or otherwise, whichever is less.
In the appellant’s case, the deleted database files had no readily ascertainable market value. The valuation method employed — the personnel or labor cost of producing or reproducing the files, was reasonable and conservative under the circumstances. The fact that a similar valuation method could be utilized in a damage case does not invalidate the method in a destruction case where the property does not have a readily ascertainable market value. was reasonable and not inconsistent with the Manual provision pertaining to value.
Before the military judge may accept a plea of guilty, the military judge must be satisfied that there is a sufficient factual basis for the plea. R.C.M. 910(e); United States v. Care, 18 C.M.A. 535, 40 C.M.R. 247, 1969 WL 6059 (1969). Before a guilty plea will be overturned on appeal, there must exist a substantial basis on the record in law and fact for doing so. (United States v. Vega, 39 M.J. 79, 81 (C.M.A.1994)(citing United States v. Prater, 32 M.J. 433 (C.M.A. 1991)); United States v. Logan, 22 C.M.A. 349, 351, 47 C.M.R. 1, 3, 1973 WL 14641 (1973)). The appellant’s pleas in this case were provident and properly accepted by the military judge, and there exists no substantial basis for overturning the guilty pleas and findings as to the Article 108, UCMJ, offense. The assignment of error is without merit.
We conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Accordingly, the findings of guilty and the sentence, as approved on review below, are affirmed.
CONCLUSION
We conclude that the definition of military property under Article 108, UCMJ, as including “all property, real or personal ” is broad enough to encompass computer data files that may be “owned, held, or used by one of the armed forces of the United States.” This is so whether the data files are characterized as tangible or intangible. Additionally, the method of valuation utilized by the appellant
Senior Judge DeCICCO and Judge CLARK concur.

. THE MILITARY JUDGE ERRED BY FINDING THE APPELLANT GUILTY OF CHARGE II AND THE SPECIFICATION THEREUNDER, WHICH ALLEGED A VIOLATION OF ARTICLE 108 OF THE UCMJ, SINCE THE APPELLANT DID NOT DESTROY MILITARY PROPERTY.

. When a computer writes to magnetic media such as floppy disks or fixed disk drives, electrical impulses representing a stream of binary l’s and 0's travel to the writing head of the disk drive; the head is a precision electromagnet which writes the l's and 0’s to the disk by applying a charge to the microscopic metallic particles that make up the disk’s magnetic coating. The metallic particles are thus polarized, positively or negatively, thereby reproducing the pattern of l’s and 0’s in magnetic form on the magnetic medium. A record of where on the medium the file starts and ends, and which sections of the medium (sectors of a disk) a file occupies is kept in an index file called the file allocation table or FAT. When a file is deleted, the first character of the filename is removed and the file name no longer appears in a directory of the disk — the file is deleted. Likewise the sectors of the disk occupied by the file are freed up and made available for new write operations to the disk. At this point, the pattern of 1 ’s and 0's on the disk has not changed but for the file name in the FAT, so a file is readily retrievable — it may be unerased — by using a small program or utility written for this purpose which will essentially resurrect the file name and the associated sector allocation information in the FAT. However, if some or all of the sectors that contained the old file data are subsequently over-written with new data, then the old file will generally not be recoverable, in whole or at least in part, depending upon how much of the old file has been overwritten.

. Apparently the underlying supply management database application program in this case could be readily reloaded from another copy of the program. However, no backup copy of the files containing the actual data had been made.

. There is no issue in this case that the laptop computer system itself constitutes military property.

. In Peacock, the Court of Military Appeals observed:
Criminal prohibitions against damage, loss, or spoliation of military property and stores have a long history in military law____ [Citations omitted.] In enacting Article 108, Congress intended to consolidate the various articles of war protecting military property and to eliminate certain technical distinctions between them____ [Citation omitted.] In doing so, it intended to continue to offer special protection to military property because of its function or role in the national defense---[Citation omitted.] In light of the purpose of this statute, the word "damage" must be reasonably construed to mean any change in the condition of the property which impairs its operational readiness. See United States v. Ortiz ____ Appellant’s act of placing foreign objects in the [aircraft] fuel tanks impaired their utility to accomplish the mission of the Air Force just as much as if he had punctured these tanks or the tires of the aircraft which carried them.

. The military judge provided his reasoning in a memorandum attached to the record as Appellate Exhibit V.

. In United States v. Riggs, 739 F.Supp. 414 (N.D.Ill.1990), the district court denied defense motions to dismiss charges that defendant violated the federal wire fraud statute, 18 U.S.C. § 1343 and the interstate transportation of stolen property statute, 18 U.S.C. § 2314. The court held, inter alia, that electronic transfer of proprietary information from one computer to another across state lines fell within the purview of the National Stolen Property Act. Defendant gained unauthorized access to a Bell South computer in Georgia and stole, by downloading, a text file containing proprietary information regarding 911 emergency services. Bell South considered the text file to be valuable, proprietary, information. The court had no hesitation in concluding that this constituted "properly” for purposes of the wire fraud charge. Id. at 419. The court did not accept defendant's argument that the § 2314 charge could not be sustained because the only thing he allegedly transferred across state lines was electronic impulses, and these did not constitute "goods, wares, or merchandise” within the meaning of § 2314. By analogy to cases upholding wire transfer of fraudulently-obtained money, the Court reasoned that the defendant had transferred proprietary business information which became accessible at computers outside Georgia. The Court observed that the proper question was not whether the electronic impulses constituted "goods, wares, or merchandise" under § 2314, but whether the proprietary business information constituted a good, ware, or merchandise under the statute. "It is well-settled that when proprietary business information is affixed to some tangible medium, such as a piece of paper, it constitutes ‘goods, wares, or merchandise within the meaning of §2314.” Id. at 420. [Citations omitted.] "This court sees no reason to hold differently simply because [the defendant] stored the information inside computers instead of printing it out on paper. In either case, the information is in a transferrable, accessible, even salable form." Id. at 421.
The district court noted its reluctance to find a tangibility requirement in § 2314, and then observed:
In any event, this court need not decide that issue [tangibility requirement under § 2314] to resolve this case, for even if tangibility is a requirement of "goods, wares or merchandise” under § 2314, in this court’s opinion the computer-stored business information in this case satisfies that requirement. Although not printed out on paper, a more conventional form of tangibility, the information in Bell South's E911 text file was allegedly stored on computer. Thus, by simply pressing a few buttons, Neidorf [one of the defendants] could recall that information from computer storage and view it on his computer terminal. The information was also accessible to others in the same fashion if they simply pressed the right buttons on their computer. This ability to access the information in viewable form from a reliable storage place differentiates this case from the mere memorization of a formula____ The accessibility of the information in readable form from a particular storage place also makes the information tangible, transferable, salable and, in this court’s opinion, brings it within the definition of "goods, wares, or merchandise” under § 2314.
Id. at 421-22.

. In Dowling, the United States Supreme Court ruled that the National Stolen Property Act, 18 U.S.C. § 2314, did not reach interstate shipments of goods infringing copyrights. The statute imposes criminal penalties on any person who "transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud.” In Dowling, the defendants were engaged in the manufacture and sale and interstate shipment of "bootleg” phonorecords of unreleased Elvis Presley musical performances, infringing valid copyrights. The Court concluded that the phonorecords, while they contained performances of copyrighted musical compositions without authorization or payment of royalties, had not been "stolen, converted or taken by fraud” within the meaning of the statute.

. The $10.00 hourly rate is a very modest or conservative estimate. Composite standard military pay rates are published each fiscal year for the Navy and Marine Corps. Hourly, daily, monthly, and annual rates are computed for Navy and Marine Corps personnel at the various military pay grades, which may be charged for military personnel services provided to other federal, non-federal, foreign military sales customers, and private parties when reimbursement is appropriate. The fiscal year 1996 hourly rate for a LTJG is $27.97. See Defense Finance and Accounting Service, Cleveland Center Memorandum, Subject: FY96 Navy and Marine Corps Composite Standard Military Rates, of SEP 25 1995. The corresponding rate in fiscal year 1994 for a LTJG was $27.24. See the Navy Comptroller Notice 7041 for fiscal year 1994.