**UNITED STATES of America,**

v.

**Said FARRAJ a/k/a "FlyGuyNYt"; and Yeazid Farraj, Defendants.**

**No. 00 CR. 1200(VM).**

United States District Court,
S.D. New York.

May 14, 2001.

Lawrence F. Ruggiero, New York City, for Said Farraj (1).

John Curley, Federal Defender Division, Legal Aid Society, Edward M. Kratt, New York City, for Yeazid Farraj (2).

Robert R. Strang, Mary Jo White, United States Attorney for S.D.N.Y., New York City, for U.S.

## DECISION AND ORDER

MARRERO, District Judge.

Defendants Said Farraj ("Said") and Yeazid Farraj ("Yeazid") are charged in a three-count indictment (the "Indictment") with (1) conspiracy to commit an offense against the United States in violation of 18 U.S.C. § 371 ("count one"), (2) interstate transportation of stolen property in violation of 18 U.S.C. § 2314 and 2 ("count two"), and (3) fraud in connection with computers in violation of 18 U.S.C. §§ 1030(a), 1030(b), 1030(c)(3)(a) and 2 ("count three"). Said now moves (1) to dismiss count two on the ground that the allegedly stolen property does not fall within the scope of § 2314; (2) for severance from his co-defendant pursuant to Fed.R.Crim.P. 8 and 14; and (3) for early disclosure and a hearing on the admissibility of evidence of other crimes evidence as defined by Fed.R.Evid. 404(b). Yeazid moves for (1) severance under Rules 8 and 14; (2) an order precluding Rule 404(b) evidence; and (3) disclosure of the identity of alleged confidential informants.

For the reasons discussed below, the motions are denied.

## BACKGROUND

In summer of 2000, Said Farraj was a paralegal with the law firm of Orrick, Harrington & Sutcliffe LLP ("Orrick"). *See* Indictment. At the time, Orrick represented plaintiffs in a class action tobacco case: *Falise v. American Tobacco Co.*, No. CV 99–7392(JBW) (E.D.N.Y.) (*"Falise"*).

In preparation for the *Falise* trial, the attorneys and paralegals at Orrick created a trial plan (the "Trial Plan"), "exceed[ing] 400 pages and includ[ing], among other things, trial strategy, deposition excerpts and summaries, and references to anticipated trial exhibits." *Id.* ¶ 3. Only Orrick employees assigned to *Falise* were permitted access to the Trial Plan. *Id.* The Indictment does not reveal whether Said was included among such employees.

The Government charges that Said, using the moniker "FlyGuyNYt," e-mailed an 80–page excerpt of the Trial Plan to the *Falise* defendants' attorneys and offered to sell them the entire Plan. *Id.* ¶ 12(b). An FBI agent posing as one of the *Falise* defendants' attorneys negotiated with Said via e-mail and ultimately agreed to purchase the Trial Plan for $2 million. *Id.* On July 21, 2000, Yeazid, Said's brother, met with a second undercover FBI agent at a McDonald's restaurant in lower Manhattan to receive payment. *Id.* at ¶ 12(f). Yeazid was arrested then and gave a statement to the FBI implicating his brother in the conspiracy charged in the Indictment.

## DISCUSSION

### A. *Said Farraj's Motion to Dismiss Count Two*

The Government charges in count two that by e-mailing the Trial Plan excerpt across state lines, Said violated 18 U.S.C. § 2314, which provides, in relevant part, that "[w]hoever transports, transmits, or transfers in interstate or foreign commerce any goods, wares, merchandise, securities, or money, of the value of $5,000 or more, knowing the same to have been stolen, converted, or taken by fraud ... shall be fined under this title or imprisoned...." Said moves to dismiss, arguing that § 2314 applies only to the physical asportation of tangible goods or currency, not to "information" stored and transmit-

ted electronically, such as the Trial Plan excerpt e-mailed here. Neither the Supreme Court nor the Second Circuit has addressed this question directly, and this appears to be an issue of first impression in this District.

Interpretation of a criminal statute may be the judicial equivalent of juggling on a high wire. It demands a delicate balancing act, requiring the courts to walk a very fine line, hazards inherent in all directions. Read the law too broadly, and the court may overstep its bounds, treading on legislative prerogatives, and by judicial fiat extending the criminal law to conduct the lawmakers did not intend to proscribe, thereby infringing on the rights of individuals not meant to be prosecuted. Construing the law too narrowly, on the other hand, runs an equally grave risk. It could undermine the will of the legislators, allowing a potentially guilty offender to go free, and depriving the public of a measure of law enforcement and protection the statute contemplated. Either way, one misstep may plunge into misfortune, both violating the Constitution and offending common sense.

To manage these challenges, and somewhat complicate matters, the court's path is guided by competing doctrinal guidance. On the one hand is the long-standing stricture expressed by Chief Justice Marshall during the formative years of American constitutional jurisprudence:

The rule that penal laws are to be construed strictly, is perhaps not much less old than construction itself. It is founded on the tenderness of the laws for the rights of individuals; and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department. It is the legislature, not the court, which is to define a crime, and ordain its punishment.

*United States v. Wiltberger,* 5 Wheat. 76, 18 U.S. 76, 95, 5 L.Ed. 37 (1820). Recognizing that the definition of federal crimes is solely a statutory function, the Supreme Court repeatedly has admonished that in assessing whether particular conduct is encompassed by criminal statutes the courts should be guided by a principle of narrow interpretation, demanding that Congress' intent be expressed in language that is clear and definite. *See Dowling v. United States,* 473 U.S. 207, 213, 105 S.Ct. 3127, 87 L.Ed.2d 152 (1985); *Williams v. United States,* 458 U.S. 279, 290, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982); *United States v. Universal C.I.T. Credit Corp.,* 344 U.S. 218, 221–22, 73 S.Ct. 227, 97 L.Ed. 260 (1952). When determining the reach of a federal criminal statute, a court "must pay close heed to language, legislative history, and purpose in order to strictly determine the scope of the conduct the enactment forbids." *Dowling,* 473 U.S. at 213, 105 S.Ct. 3127. A criminal charge must be dismissed where the statute, as applied to the defendant's actions would not give "a person of ordinary intelligence fair notice that his contemplated conduct is forbidden." *United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 98 L.Ed. 989 (1954).

At the same time, courts have been instructed to "free our minds from the notion that criminal statutes must be construed by some artificial and conventional rule." *United States v. Dege,* 364 U.S. 51, 52, 80 S.Ct. 1589, 4 L.Ed.2d 1563 (1960) (quoting *United States v. Union Supply Co.,* 215 U.S. 50, 55, 30 S.Ct. 15, 54 L.Ed. 87 (1909) (Holmes, J.)); *United States v. Bramblett,* 348 U.S. 503, 509–10, 75 S.Ct. 504, 99 L.Ed. 594 (1955) ("That criminal statutes are to be construed strictly is a proposition which calls for the citation of no authority. But this does not mean that every criminal statute must be given the narrowest possible meaning in complete disregard of the purpose of the legislature.").

This seemingly contrasting guidance, however, does not reflect a true dichotomy, but only an adaptation of the general rule to fit the contours of a particular case.

■ The Second Circuit has held that the phrase "goods, wares, or merchandise" is " 'a general and comprehensive designation of such personal property or chattels as are ordinarily a subject of commerce.' " *In re Vericker,* 446 F.2d 244, 248 (2d Cir. 1971) (Friendly, J.) (quoting *United States v. Seagraves,* 265 F.2d 876, 880 (3d Cir. 1959)). Said, relying on *Vericker,* argues that the Second Circuit has at times determined that documents fall outside the scope of § 2314. At other times, however, the Second Circuit and other courts have held that documents may be considered "goods, wares, [or] merchandise" under § 2314. *See, e.g., United States v. Greenwald,* 479 F.2d 320 (6th Cir.1973) (documents containing secret chemical formulae); *United States v. Bottone,* 365 F.2d 389 (2d Cir.1966) (drug manufacturing processes); *Seagraves,* 265 F.2d 876 (geophysical maps); *United States v. Caparros,* No. 85 Cr. 990, 1987 WL 8653 (S.D.N.Y. March 25, 1987) (secret business plans).

The FBI documents at issue in *Vericker* detailed the criminal activity of certain individuals. 446 F.2d at 248. Judge Friendly reasoned that the FBI documents were not "good, wares, [or] merchandise" within the meaning of the statute because the substance contained in the documents was not ordinarily the subject of commerce. *See id.* The Trial Plan at issue here, however, as is true for trial plans generally, was the work product of a business relationship between client and attorney, and may thus be viewed as an ordinary subject of commerce, created for a commercial purpose and carrying inherent

commercial value at least as to the persons directly interested in the matter.

■ Said argues that even if trial plans generally may be viewed as goods under § 2314, he is accused of transmitting an "intangible," an electronic form of the document, and therefore that it was not a good, but merely "information."

The text of § 2314 makes no distinction between tangible and intangible property, or between electronic and other manner of transfer across state lines. Indeed, in 1988, Congress amended § 2314 to include the term "transmits" to reflect its agreement with the Second Circuit and other courts which had held that § 2314 applied to money wire transfers, where the only interstate transportation took place electronically and where there was no transportation of any physical item. *See* Anti-Drug Abuse Act of 1988, Pub.L. 100–690, § 7057(a), 102 Stat. 4181, 4402 (1988); 134 Cong. Reg. S17367, S17370 (statement of Sen. Biden) (citing *United States v. Gilboe,* 684 F.2d 235 (2d Cir.1982); *United States v. Wright,* 791 F.2d 133 (10th Cir.1986); *United States v. Goldberg,* 830 F.2d 459 (3d Cir.1987)); *see also, United States v. Piervinanzi,* 23 F.3d 670, 678 n. 6 (2d Cir.1994) (discussing 1988 amendment). In *Gilboe,* the Second Circuit addressed the issue of electronic transfer for the first time and recognized that .

> the manner in which funds were moved does not affect the ability to obtain tangible paper dollars or a bank check from the receiving account.... Indeed, we suspect that actual dollars rarely move between banks, particularly in international transactions.... The primary element of this offense, transportation, "does not require proof that any specific means of transporting were used."

684 F.2d at 238 (quoting *Pereira v. United States,* 347 U.S. 1, 9, 74 S.Ct. 358, 98 L.Ed. 435 (1954)).

The Second Circuit has also held that § 2314 was violated when the defendants stole documents containing some drug manufacturing process, copied and returned them, and then sent the copies abroad. *See Bottone,* 365 F.2d at 391–92. The court noted that it did not matter that the item stolen was not the same as that transported. Rather, as observed by Judge Friendly,

> where the physical form of the stolen goods is secondary in every respect to the matter recorded in them, the transformation of the information in the stolen papers into a tangible object never possessed by the original owner should be deemed immaterial. It would offend common sense to hold that these defendants fall outside the statute simply because, in efforts to avoid detection, their confederates were at pains to restore the original papers to [the employer] and transport only copies or notes....

*Id.* at 394.

Relying in part on the Second Circuit's decisions in *Gilboe* and *Bottone,* the court in *United States v. Riggs,* 739 F.Supp. 414 (N.D.Ill.1990) held that the defendant violated § 2314 when he downloaded a text file containing propriety information onto a home computer, transferred it over a computer network to his co-defendant in another state, who then uploaded it onto a computer bulletin board. *See id.* at 417, 420. The court reasoned that just because the defendant stored the information on a computer, rather than printing it on paper, his acts were not removed from the purview of the statute:

> [I]n the instant case, if the information in Bell South's E911 text file had been affixed to a floppy disk, or printed out on a computer printer, then [the defen-

dant's] transfer of that information across state lines would clearly constitute the transfer of "goods, wares, or merchandise" within the meaning of § 2314. This court sees no reason to hold differently simply because [the defendant] stored the information inside a computer instead of printing it out on paper. In either case, the information is in a transferrable, accessible, even salable form.

*Id.* at 421. The court noted that "[r]eading a tangibility requirement into the definition of 'goods, wares, or merchandise' might unduly restrict the scope of § 2314, especially in this modern technological age," and recognized that although not tangible in a conventional sense, the stolen property was physically stored on a computer hard drive and could be viewed and printed out with the push of a button. *See id.* at 422. "The accessibility of the information in readable form from a particular storage place also makes the information tangible, transferable, salable, and in this court's opinion, brings it within the definition of 'goods, wares, or merchandise' under § 2314." *Id.*

The Supreme Court's decision in *Dowling v. U.S.*, 473 U.S. 207, 105 S.Ct. 3127, 87 L.Ed.2d 152 (1985), relied on here by Said, was appropriately distinguished by the *Riggs* court. In *Dowling*, the Supreme Court held that where the victim holds only a copyright, distinct from the possessory interest of the owner of a simple good, and the only act charged involves an unauthorized infringement of that copyright, there is no violation of § 2314. The *Dowling* Court remarked that § 2314 contemplates "a physical identity between the items unlawfully obtained and those eventually transported." Said reads this statement to mean that the electronic transfer of a document falls without the statute.

The Tenth Circuit, relying on *Dowling*, has also taken the view that § 2314 requires the transfer of physical goods, wares, or merchandise. *See United States v. Brown*, 925 F.2d 1301, 1308 (10th Cir. 1991). The defendant in *Brown* crossed state lines with stolen computer code stored on a computer disk. *See id.* at 1302. The district court dismissed the indictment, stating that the material contained in the notebooks and on the hard drive was "not the type of property which is contemplated within the language of the statute, goods, wares or merchandise." *Brown*, 925 F.2d at 1306–07. The Tenth Circuit affirmed the dismissal, observing that " § 2314 applies only to physical 'goods, wares or merchandise.' Purely intellectual property is not within this category. It can be represented physically, such as through writing on a page, but the underlying, intellectual property itself remains intangible." *Brown*, 925 F.2d at 1306–07. In this Court's view, the reasoning in *Brown* does not square with the Second Circuit's *Bottone* decision, and may be based on a misapplication of *Dowling*.

Lastly, Said turns to *United States v. Stafford*, 136 F.3d 1109 (7th Cir.1998). In *Stafford*, the objects of the questioned transfers were "Comdata codes"—a sequence of numbers truckers use to acquire cash while on the road. *See id.* at 1111. The driver receives the code from his employer, writes them down on a "comcheck" and then cashes it like a check. *See id.* The Seventh Circuit held that the codes were not "goods" but merely "information", and that therefore stealing them did not violate § 2314. Importantly, the Seventh Circuit does not reveal how the codes were transferred (presumably they were communicated over the telephone), and the court specifically declined to address whether § 2314 would be implicated if the perpetrator had written down the codes on a piece of paper and transported them

across state lines. Consequently, the reasoning in *Stafford* sheds little light on the statute's application to the conduct charged against Said.

■ Weighing the scant authority at hand, the Court is persuaded that the view most closely analogous to Second Circuit doctrine is that which holds that the transfer of electronic documents via the internet across state lines does fall within the purview of § 2314. The indictment is therefore upheld and the motion to dismiss count two is denied.

### B. *Motions to Sever*

■ Said and Yeazid have both moved for separate trials. Severance is an extraordinary remedy, and is granted only in exceptional cases. "Joint trials play a vital role in the criminal justice system. They promote efficiency and serve the interest of justice by avoiding the scandal and inequity of inconsistent verdicts." *Zafiro v. United States*, 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993) (citations omitted). The presumption in favor of joint trials is particularly strong where the crime charged involves a "common scheme or plan." *United States v. Girard*, 601 F.2d 69, 72 (2d Cir.1979). This long-standing preference of joint trials can be overcome only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. *Zafiro*, 506 U.S. at 539, 113 S.Ct. 933. Even when the risk of prejudice arises, severance is not automatic. "Rule 14 does not require severance even if prejudice is shown, rather it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Id.* The Court further explained that less drastic measures, such as limiting instructions, often

will suffice to cure any risk or prejudice. *Id.*

This case involves a narrow conspiracy and three charges. An appropriately instructed jury should be able to consider the charges and the defendants separately.

■ Said's specific claim of prejudice based on his brother's post-arrest statement to the police does not warrant the extraordinary relief of severance. The Supreme Court has held that in keeping with the Sixth Amendment's Confrontation Clause, "where two defendants are tried jointly, the pretrial confession of one cannot be admitted against the other unless the confessing defendant takes the stand." *Richardson v. Marsh*, 481 U.S. 200, 206, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). However, the Court ruled that there is no Sixth Amendment violation when the pretrial confession is admitted with a proper limiting instruction to the jury and a redaction of the pre-trial statement that eliminates any reference to the other defendant's existence. *See id.* at 211, 107 S.Ct. 1702.

Said argues that Yeazid's post-arrest statement to the FBI cannot be redacted in such a way as to prevent the jury from reaching the conclusion that Yeazid's statement implicates Said as part of the plot to steal the Trial Plan. This Court disagrees. Yeazid's post-arrest statement, while replete with references to Said, may be effectively redacted to safeguard Said's rights under the Confrontation Clause.

Yeazid's arguments that "the mixture of evidence will result in a case of prejudicial spillover," and that the only "satisfactory solution" is severance are, for the reasons already stated, unpersuasive.

### C. *Motion for Pretrial Disclosure of Other Crimes Evidence*

The Government contends that it is not aware of any evidence of other crimes

committed by Said or Yeazid that it would seek to admit under Fed.R.Evid. 404(b). Thus, Said and Yeazid's motions for disclosure are denied without prejudice.

### D. *Yeazid's Motion to Disclose Identity of Confidential Informant*

The Government denies the existence of a confidential informant, and Yeazid's motion is consequently denied without prejudice.

### ORDER

For the reasons set forth above, it is hereby

ORDERED that the defendants' pretrial motions to dismiss and for other relief are denied.