**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**John T. RISK, Defendant–Appellee.**

No. 87–1577.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 19, 1988.

Decided April 11, 1988.

James M. Warden, Asst. U.S. Atty., Indianapolis, Ind., for plaintiff-appellant.

Philip R. Melangton, Jr., Melangton & Mowrer, P.A., Indianapolis, Ind., for defendant-appellee.

Before BAUER, Chief Judge,
POSNER, Circuit Judge, and WILL,
Senior District Judge.[*]

BAUER, Chief Judge.

On October 3, 1986, a grand jury indicted John T. Risk, an officer and branch manager of Merchants National Bank & Trust Company of Indianapolis (Merchants National Bank). Two of the five counts in the indictment alleged that Risk caused the Bank's failure to file Currency Transaction Reports (CTR's), in violation of 31 U.S.C. §§ 5313 and 5322 (CTR statute), 31 C.F.R. Part 103, and 18 U.S.C. § 2 (Counts 1 and

2).[1] Two other counts alleged that Risk concealed material facts from the Internal Revenue Service in violation of 18 U.S.C. § 1001 (Counts 3 and 4). The district court, 672 F.Supp. 346, dismissed the indictment and, after reviewing the government's motion to reconsider, reaffirmed its previous dismissal. The government appeals. We affirm.[2]

Through voluntary discovery, the government provided Risk with the documentation presented to the grand jury that entered his indictment. The government filed a notice of its voluntary compliance with discovery and Risk appended these discovery materials to his motion to dismiss. These documents provided by the government, therefore, served as the foundation for Risk's motion to dismiss (and, ultimately, the district court's decision). In its response, the government admitted that these facts presented by Risk "essentially accurately summarizes the facts which give rise to the indictment." The government did not object to Risk's submission of these facts, nor did it challenge the authority of the district court to consider the government's facts, as presented by Risk, upon deciding Risk's motion to dismiss.

These uncontested facts show that on December 5, 1985, Steven Baker (really undercover Special Agent Steve Weida of the Internal Revenue Service) entered the main branch of Merchants National Bank and attempted to cash a check drawn on the bank by Raffensperger, Hughes & Co., Inc., and payable to Baker in the amount of $58,677.33. After speaking with Risk, Baker received $9,677.33 in currency and five cashier's checks for $9,800 each. Baker then cashed each of the cashier's checks at five other branches of Merchants National Bank on that same day.

On December 24, 1985, Baker again entered the main branch of Merchants Na-

---

[*] The Honorable Hubert L. Will, Senior Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

[1] The indictment also charged Risk with making a false entry in a bank record in violation of 18 U.S.C. § 1005 (Count 5). That portion of the indictment is not before us.

[2] Risk claims that this court does not have jurisdiction to hear the government's appeal because the district court's judgment was a trial on the merits and an appeal would violate the double jeopardy clause of the fifth amendment. We disagree. Jeopardy has not yet attached where, as here, the defendant has not yet been "put to trial." *See Serfass v. United States*, 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1974).

tional Bank and wrote a check on his own account payable to "cash" in the amount of $15,000. In exchange, Baker received $9,000 in currency and a cashier's check for $6,000 from Risk.[3]

In dismissing the indictment, the district court found the indictment facially sufficient, but held that the statute under which Risk was indicted did not apply to the facts of the case and that to prosecute Risk for such a violation would amount to an unconstitutional application of the statute to Risk. The government argues that the district court erred, both procedurally and substantively, in dismissing the indictment. Specifically, the government contends that the district court exceeded its authority under Rule 12(b) of the Federal Rules of Criminal Procedure by relying on incomplete facts stated by Risk, ruling on Risk's guilt or innocence, and failing to consider all of the facts before it. Moreover, the government claims that the district court erred in finding that there was no violation of the CTR statute.

Rule 12(b) ensures that trials will be efficient and that defendants raise defenses "which [are] capable of determination without the trial of the general issue" before trial. Fed.R.Crim.P. 12(b); *United States v. Griffin*, 765 F.2d 677, 681 (7th Cir.1985). Rule 12(e) requires the court to make a pretrial determination on the motions raised by a defendant unless there is good cause not to do so. Fed.R.Crim.P. 12(e). Rule 12(e) also allows the court to consider factual issues in its disposition of 12(b) motions. *Id.; United States v. Coia*, 719 F.2d 1120, 1123 (11th Cir.1983).

■ The government correctly points out that, at the pretrial stage, the indictment ordinarily should be tested solely by its sufficiency to charge an offense, regardless of the strength or weakness of the government's case. *United States v. Sampson*, 371 U.S. 75, 78–79, 83 S.Ct. 173,

174–75, 9 L.Ed.2d 136 (1962). The government, however, mistakenly reads the district court's opinion as dismissing the indictment because the government could not prove its case. Rather, the district court found the allegations in the indictment insufficient to state a claim under the CTR statute. Specifically, the indictment alleged that on December 5 and 24, 1985, Risk knowingly and willingly failed to file a CTR for transactions involving more than $10,000. Although this fulfills the elements of a violation of 31 U.S.C. §§ 5313 and 5322 and 31 C.F.R. Part 103, the district court found that the government's characterization of the undisputed facts did not constitute a violation of any statute. In other words, the government's own facts proffered to the defendant and the district court simply did not conform to the allegations in the indictment. The district court found no violation and correctly dismissed the indictment, not because the government could not prove its case, but because there was no case to prove.

■ The government did not challenge the district court's authority to consider the undisputed facts disclosed by the government until *after* the district court granted Risk's motion to dismiss. Even then, the government did not object but proffered *additional* facts which it urged the court to consider upon reconsideration of Risk's motion.[4] It was not until this appeal that the government first objected to the district court's consideration of the undisputed facts voluntarily disclosed by the government to Risk during discovery. Now it is too late. Under the unusual circumstances of this case, we find that the district court acted properly.

The government's challenge to the district court's substantive ruling must also fail. The government argues that on two occasions Risk structured a single currency transaction in excess of $10,000 into multiple components, each less than $10,000, and

---

**3.** The government attempted to offer evidence showing that Risk suggested structuring these transactions but the district court found this evidence irrelevant. *See, infra,* note 4.

**4.** The government incorrectly contends that the district court did not consider these additional

facts. To the contrary, the district court considered them irrelevant because they concerned Risk's state of mind, which has no bearing on whether the defendant could have violated the CTR statute.

that this "artifice" cannot allow Risk to escape the reach of the CTR statute, which requires a financial institution to file a CTR for each domestic currency transaction in excess of $10,000. In rejecting this argument, we are bound by our recent decision in *United States v. Gimbel,* 830 F.2d 621 (7th Cir.1987).

In *Gimbel,* the defendant Gimbel, a bank customer, was convicted of structuring certain bank deposits and withdrawals exceeding $10,000 into smaller components to circumvent the currency reporting requirements. The "dispositive" question in *Gimbel,* as here, was whether the CTR statute "imposed a duty" on the bank to report the structured transactions. After thoroughly reviewing the conflicting decisions of the various circuits and their rationales, we found the bank had no duty and reversed Gimbel's conviction. We concluded that the bank had no legal duty to report the structured transaction because neither the statute nor the Secretary of the Treasury's regulations expressly require the aggregation of multiple transactions over $10,000 occurring on the same day. As we stated in *Gimbel,* "the essential characteristic of a structured transaction is that the customer effects several discrete 'physical transfer[s] of currency.' The original [Treasury] regulations gave no hint that financial institutions were required to assess the economic reality behind these acts." *Id.* at 625 (citations omitted). Finally, we noted that, although the Secretary has recently directed financial institutions to aggregate same-day transactions, the Secretary did not promulgate Form 4789 containing this direction in accordance with the procedures set forth in section 553 of the Administrative Procedure Act and, therefore, "the directions contained on the form constitute nothing more than interpretive rules." *Id.* at 626.

The government's attempt to distinguish *Gimbel* is unpersuasive. It urges us to read *Gimbel* as differentiating between the duty of Risk, a banker, to disclose a structured transaction, and that of Gimbel, a customer, to do so. The government argues that because Risk, an agent of the bank, suggested structuring the transaction to evade the reporting requirements, the separate transactions are somehow no longer distinct. The government, however, misconstrues *Gimbel.*[5] Our finding that the bank had no legal duty to report structured transactions did not rest on the identity of the defendant, but rather on the lack of statutory authority for finding a violation of the CTR statute for *any* structured transactions that do not exceed $10,000. Nothing in *Gimbel* suggests that the CTR statute treats bankers and customers differently; the law does not proscribe structured transactions not exceeding $10,000, regardless of who does it. Risk, therefore, could not have violated his duty to report if no violation occurred. Since banks or customers need not report structured transactions not exceeding $10,000, Risk did not violate the law.[6]

We therefore affirm the decision of the district court.

---

**5.** In *Gimbel,* the facts do not clearly state whether Gimbel or his banker suggested the structured transaction. *Id.* at 623.

**6.** Although not relevant to our resolution of this appeal, we note that Congress has recently acted to close this "loophole" in the CTR statute. The Money Laundering Control Act of 1986, P.L. 99–570, explicitly prohibits structuring transactions to evade the reporting requirements, making this a case of last impression.