**UNITED STATES of America,**
**Plaintiff,**

v.

**Jo Ann CARROLL and, Brian**
**Denny, Defendants.**

**No. 03–CR–30195–DRH.**

United States District Court,
S.D. Illinois.

May 27, 2004.

Andrew J. Lay, Assistant U.S. Attorney, Fairview Heights, IL, for the Plaintiff.

J. William Lucco, Lucco, Brown, et al., Edwardsville, IL, for the Defendant, Jo Ann Carroll.

Alex S. Vesselinovitch, Katten, Muchin, et al., Chicago, IL, for the Defendant, Brian Denny.

Laura A. Blatz, U.S. District Court, East St. Louis, IL, Court Reporter.

## MEMORANDUM AND ORDER

HERNDON, District Judge.

Before the Court is the joint motion to dismiss the indictment submitted by Defendants Jo Ann Carroll and Brian Denny

(Doc. 27). On September 19, 2003, the Government filed an eleven count indictment charging Defendants jointly with mail fraud, conspiracy to defraud, and kickbacks, and charging Defendant Carroll individually with making a false statement (Doc. 1). The charges against Defendants arise from their sales of medical supplies to Southern Medical Distributors (SMD), a company organized for an undercover investigation into Medicare fraud by the Federal Bureau of Investigation (FBI), the Department of Health and Human Services (HHS), and Postal Inspection Service (PIS). According to the indictment, Defendants provided SMD with free medical supplies to induce SMD to buy other supplies and falsified the sale records to assure SMD would be protected in case of a Medicare audit (Indictment ¶ 12). Defendants have filed a joint motion to dismiss the charges brought against them jointly arguing essentially in various forms that their conduct was not criminal (Doc. 27). On Friday, April 9, 2004, the Court heard oral arguments on the motion to dismiss and took the matter under advisement. Based on the pleadings, applicable case law, and the reasons given below, the Court **DENIES** Defendants' joint motion to dismiss the indictment (Doc. 27).

## I. BACKGROUND

The charges against Defendants Jo Ann Carroll and Brian Denny arise from their sales of medical supplies (specifically enteral products) to Southern Medical Distributors (SMD), an undercover government entity. The Government's indictment alleges that "Defendants created false, fradulent [sic], and misleading documents that concealed the inducements, bribes, and kickbacks offered to customers during the sale and marketing of enteral feeding products for ultimate use by beneficiaries of the Medicare program" (Indictment ¶ 1).

### A. *Alleged Facts*

The indictment alleges that Defendants Brian Denny and Jo Ann Carroll marketed and sold enteral products[1] to nursing homes and durable medical equipment suppliers (Indictment ¶¶ 1–2). The separate enteral products function together to create an enteral system by which a patient unable to feed himself or digest food can obtain life-sustaining nutrients. The individual enteral products include: liquid food (also referred to as food and high calorie liquid food); feeding tubes (also referred to as spikes, plastic tubes, daily use plastic tubes, pump sets, tubes, and plastics); and enteral pumps (also referred to as feeding pumps and enteral feeding pumps). The enteral system works by providing a patient with liquid food via a feeding tube connected to an enteral pump (Indictment ¶ 2). The enteral pump regulates and forces liquid food through the feeding tubes into the patient and has a market value of approximately $800 (Indictment ¶¶ 2, 18).

Prior to March 16, 2000, the FBI, the HHS, and the PIS established an undercover business called SMD in Swansea, Illinois (Indictment ¶¶ 4, 18). SMD held itself out to be a newly established distributor of medical equipment to affiliated nursing homes, rehabilitation facilities, and home health agencies. (Indictment ¶ 4).

The indictment further alleges that from February 23, 2000, until July 24, 2001, the Defendants sold enteral supplies in an illegal manner (Indictment ¶ 11). With regard to SMD, the indictment references events that occurred between March 16, 2000, and June 11, 2001 (Indictment ¶¶ 22–

---

**1.** The term "enteral" means "[w]ithin, or by way of, the intestine or gastrointestinal tract, especially as distinguished from parenteral." STEDMAN'S MEDICAL DICTIONARY (27th ed.2000).

36). Specifically, the indictment alleges that Defendants provided SMD with 95 free pumps (worth approximately $76,000.00) over the course of five months to induce it to purchase plastic tubes and food (Indictment ¶¶ 14, 18, 37–40, 43, 47). In providing SMD with these pumps, Defendants apparently believed, whether correctly or incorrectly, that SMD would need to incur some cost for the pumps if it was to be reimbursed under Medicare Part B (Indictment ¶¶ 20, 21, 24, 26, 27, 32, 34). So, rather than simply providing SMD with the pump for free, Defendants charged SMD an arbitrary rental fee that would be offset by an equal reduction in the price of the tubes and food (Indictment ¶¶ 20, 21–26, 30, 32, 34). (For example, Defendants might charge SMD $95 for tubes and food and $5 for a monthly pump rental rather than charge SMD $100 for tubes and food and $0 for the pump). The indictment also alleges that Defendants provided SMD with invoices and credit memos that showed SMD paid a monthly rental fee for the pumps (Indictment ¶¶ 20, 21–26, 27, 30, 32, 34). Furthermore, the indictment alleges that Defendants explained Medicare's audit and reimbursement procedures to SMD during telephone conversations and thereafter made an agreement with SMD to show some monthly rental fee for the pumps to assure reimbursement (Indictment ¶¶ 20, 21–26, 30, 32, 34).

### B. *Charges*

Based on the facts above, the indictment brings ten counts against Defendants Jo Ann Carroll and Brian Denny jointly, and one count against Defendant Jo Ann Carroll individually. Count I charges Defendants jointly with a conspiracy to defraud the lawful functions of the Medicare Program under 18 U.S.C. § 371. Count II charges Defendants jointly with a violation of the Anti–Kickback Statute under 42 U.S.C. § 1320a–7b(b)(2)(B). Counts III through X charge Defendants jointly with violations of Mail Fraud under 18 U.S.C. §§ 1341 and 1342. Count XI charges Defendant Jo Ann Carroll individually with making a false statement pursuant to 18 U.S.C. § 1001.

### III. ANALYSIS

■ FEDERAL RULE OF CRIMINAL PROCEDURE 12(b)(2) allows a party to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." "[F]or purposes of RULE 12(b)(2), a charging document fails to state an offense if the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation." *U.S. v. Panarella,* 277 F.3d 678, 685 (3d Cir.2002). FEDERAL RULE OF CRIMINAL PROCEDURE 12(b)(2) authorizes dismissal of an indictment if its allegations do not suffice to charge an offense, but such dismissals may not be predicated upon the insufficiency of the evidence to prove the indictment's charges. *U.S. v. DeLaurentis,* 230 F.3d 659, 661 (3d Cir.2000)(citing *United States v. Sampson,* 371 U.S. 75, 78–79, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962)); *see also U.S. v. Doherty,* 969 F.2d 425 (7th Cir.1992)(**assessing whether an indictment's allegations of a check-kiting scheme constituted an offense under a bank fraud statute**).

■ In addition, an indictment must comply with FEDERAL RULE OF CRIMINAL PROCEDURE 7(c)(1) by containing "a plain, concise, and definite written statement of the essential facts constituting the offense charged ..." Under RULE 7(c)(1), an indictment will overcome a motion to dismiss "if it 'first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future

prosecutions for the same offense.' " *U.S. v. Webster*, 125 F.3d 1024, 1029 (7th Cir.1997)(quoting *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974)).

Defendants' joint motion to dismiss Counts I through X in conjunction with the Government's response raises numerous issues (Doc. 27). These issues include:

1) Whether the Court may consider the Medicare experts' affidavits submitted by Defendants as exhibits;

2) Does the indictment actually allege an Illegal Kickback (Count II);

3) Is the Discount Safe Harbor provision violative of due process because of vagueness;

4) Could Defendants have formed the requisite intent to violate the Anti–Kickback statute;

5) Does the indictment actually allege a crime of fraud (Counts III—X) or conspiracy to engage in fraud (Count I);

6) Does the indictment properly allege a crime of mail fraud by including that Medicare was deprived of a property right; and

7) Does the indictment apprise Defendants of the charges against them with reasonable certainty.

Since the conclusions on other issues are strongly guided by determinations on (1) the admissibility of the Medicare experts' affidavits and (2–4) whether the indictment charges a crime of an illegal kickback, the Court will address these issues first followed by the remaining issues in the sequential order provided above.

### 1. *Consideration of the Experts' Affidavits*

Defendants have submitted the affidavits of three experts in support of their motion to dismiss. Common to all three experts is that (1) each was formerly employed by the federal government; (2) each asserts and relies on facts not contained in the indictment; (3) each explains the meaning of some statute or regulation; and (4) each explains how their interpretations of the law protects Defendants from criminal liability.[2] The Court concludes that the affidavits of Defendants' three experts cannot be considered in ruling on the present RULE 12(b) motion since they rely on facts not contained within the indictment and assert non-authoritative applications of law. At best, the Court views the experts' affidavits on legal issues as non-authoritative, *ad hoc* reference materials.

First, the Court cannot consider the experts' affidavits to the extent they assert evidence not contained in the indictment. Generally, a court cannot consider

---

**2.** First, Defendants have submitted the affidavit of Thomas S. Crane who is a member of the law firm Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. (Def.Ex. C, ¶ 1.1). From 1985 until 1992. Crane worked for the U.S. Department of Health and Human Services during which time he was the principal author of the initial, final "safe harbor" rules promulgated by the Office of Inspector General and HHS on July 29, 1991 (56 Fed.Reg. 35,952–35,987)(Def.Ex. C, ¶¶ 1.1, 1.3). According to Crane's affidavit. Defendants are immune from prosecution under the Anti–Kickback Statute, 42 U.S.C. § 1320a–7b(b), since their actions fall within the safe harbor provisions (Def.Ex. C, ¶ 6.5). Second, Defendants have submitted the affidavits of Bernard

Patashnik and Stanley Weintraub (Since Weintraub's affidavit simply asserts that he agrees with Patashnik, review will only be of Patashnik's affidavit.) Bernard Patashnik is currently a health policy consultant with MARC Associates in Washington, D.C., and was Director of the Division of Medical Services Payment at the Centers for Medicare and Medicaid Services from 1984 until August 1994 (Patashnik Aff. ¶ 1.1). In his affidavit, Patashnik explains that the "reasonable charge" methodology of Medicare Part B does not concern how much Defendants charged and therefore Defendants' invoices are immaterial to Medicare's payment for products (Patashnik ¶¶ 3.2, 4.1–4.6).

evidence in a motion to dismiss if it pertains to factual issues that should be directed to the jury during trial. *U.S. v. DeLaurentis*, 230 F.3d 659, 660–61 (3d Cir.2000)(stating **"[u]nless there is a stipulated record, or unless immunity issues are implicated, a pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence"**)(citing *U.S. v. Knox*, 396 U.S. 77, 83 n. 7, 90 S.Ct. 363, 24 L.Ed.2d 275 (1969)); *U.S. v. Jensen*, 93 F.3d 667 (9th Cir.1996); *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir.1992)(per curiam)(stating **"there is no summary judgment procedure in criminal cases. Nor do the rules provide for a pretrial determination of the evidence"**). However, evidence may be considered if it concerns factual issues extrinsic to the charges in the indictment. *See, e.g., U.S. v. Napue*, 834 F.2d 1311, 1329 (7th Cir.1987)(**noting that evidentiary hearings for motions to dismiss are acceptable in cases of "selective prosecution" and "vindictive prosecution"**).[3] In this case, the three experts have referred to some events not referenced in the indictment. Specifically, the experts describe

Medicare administrative procedures that are not published in statutes or regulations and utilize these facts to show that Defendants have neither materially defrauded Medicare nor violated the Anti–Kickback Statute. During the hearing on April 9, 2004, the Government asserted that it would dispute these factual assertions by producing at trial evidence of contrary Medicare procedures. Consequently, the Court cannot consider Defendants experts' opinions to the extent they relate to factual issues to be directed to the jury and concern facts not contained in the indictment.

Second, the experts' legal opinions cannot be considered authoritative to the extent they assert applications and conclusions of federal statutes. Under *Chevron*, courts must give deference to an agency's interpretations of Congressional statutes that apply to it. However, courts must only give deference to agency interpretations contained in "notice-and-comment rulemaking." *See American Federation of Government Employees v. Rumsfeld*, 262 F.3d 649, 658 n. 10 (7th Cir.2001)(stating ***Chevron* deference is not appropriate for an agency's opinion letters, policy statements, agency manuals and enforcement guidelines**).[4] The

---

3. Defendants rely incorrectly on *U.S. v. Risk*, 843 F.2d 1059, 1061 (7th Cir.1988), for the proposition that the Court can consider evidence relating to the charges in the indictment. In *Risk*, the district court considered undisputed facts in dismissing an indictment under FED R. CRIM. P. 12(b). *Id.* While the Seventh Circuit stated that RULE 12(e) [now RULE 12(d) ] "allows a court to consider factual issues in its disposition of 12(b) motions," *id.*, this statement is not the rule for two reasons. First, the Seventh Circuit's statement relied without analysis on *U.S. v. Coia*, 719 F.2d 1120, 1123 (11th Cir.1983), a case that was overturned by Eleventh Circuit's more detailed en banc opinion in *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992)(en banc). Second, and more importantly, the Seventh Circuit's opinion in *Risk* reserved this issue when it held that the gov-

ernment's objection during appeal to the district court's consideration of undisputed facts was too late. *Id.* Because the Seventh Circuit reserved ruling on this issue and the Eleventh Circuit's en banc opinion in *Critzer* sets forth the rule to which most federal courts adhere, the Court concludes that the correct rule is that in determining this motion it cannot consider evidence relating to factual issues.

4. The Government stated incorrectly at the hearing that *U.S. v. Sinclair*, 74 F.3d 753 (7th Cir.1996), is dispositive on the issue of whether the Court can consider an expert's legal opinion for a RULE 12(b) motion. In *Sinclair*, the Seventh Circuit noted that an expert's opinion on legal matters is admissible at trial so long as it does not describe the law governing the legal issues of the case. 74 F.3d 753, 757 n. 1 (7th Cir.1996) (citing *Bammerlin v.*

experts' opinions clearly do not qualify for deference under *Chevron* since, at best, they equate to an opinion letter. More importantly, the experts' opinions do not amount to "agency" interpretations since they are not officials within these agencies and are no longer even employed by the federal government. Therefore, the experts' opinions are not authoritative to the extent they interpret and apply Congressional statutes relevant to the governmental groups for which they were formerly employed.

Third, the experts' legal opinions cannot be considered authoritative to the extent they assert applications and conclusions of federal regulations. Under *Christensen*, a court must give deference to an agency's interpretation of its own regulations when those regulations are ambiguous. *Christensen v. Harris County*, 529 U.S. 576, 588, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000). Assuming *arguendo* that these regulations are ambiguous, the experts' opinions do not equate to "agency" interpretations since they are not officials within these agencies and are no longer even employed by the federal government. Therefore, the experts' opinions are not authoritative to the extent they interpret and apply federal regulations relevant to the governmental groups for which they were formerly employed.

■ Fourth, the experts' opinions should not be given deference based on the fact that they may have written some of the relevant regulations. While some of these experts may have been authors of these regulations, their subsequent interpretations should be given no more defer-

ence than that given to a congressman's and lobbyist's subsequent explanations of a statute in *Covalt*. " '[S]ubsequent legislative history' is not helpful as a guide to understanding a law." *Covalt v. Carey Canada Inc.*, 860 F.2d 1434, 1438 (7th Cir.1988). "Subsequent writings may be nothing but wishful thinking, and unless they are uttered as part of the process of enacting a later law ... they are of no account." *Id.* (citing *Pierce v. Underwood*, 487 U.S. 552, 566–67, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) and *Quern v. Mandley*, 436 U.S. 725, 736, 98 S.Ct. 2068, 56 L.Ed.2d 658 (1978)). In *Covalt*, the Seventh Circuit disregarded a congressman's and lobbyist's explanations of a statute made after the statute's passage since their subsequent understandings were not necessarily considered during the passage of the statute. The same rationale for disregarding the opinions in *Covalt* applies in this case. Here, the experts' subsequent opinions of the rules they authored were not necessarily considered by the agency officials who accepted and implemented the rules. Therefore, the experts' subsequent explanations of the rules they authored cannot be considered as authoritative interpretations of those rules.

### 2. Does the Indictment Allege a Violation of the Anti–Kickback Statute

■ Count II of the indictment alleges that Defendants violated the Anti–Kickback Statute, 42 U.S.C. § 1320a–7b(b)(2)(B), when they provided SMD with free enteral pumps to induce SMD to purchase, lease, and order other enteral products (tubes and food) (Indictment ¶ 43).

*Navistar Int'l Transp. Corp*, 30 F.3d 898, 900 (7th Cir.1994), and *Harbor Ins. Co. v. Continental Bank Corp.*, 922 F.2d 357, 366 (7th Cir.1990)). *Sinclair* is inapposite because it concerned what legal opinions a jury could hear at trial whereas the issue here is what legal opinions a district judge may consider

on a RULE 12(b) motion to dismiss the indictment. Clearly, the concern for limiting the jury's exposure to unauthoritative opinions of law is distinguishable from limiting a judge's exposure to various authoritative and nonauthoritative legal sources.

Defendants argue that their providing free enteral pumps falls squarely within the discount "safe harbor" provision. 42 U.S.C. § 1320a–7b(b)(3)(A), (Doc. 27, p. 11–17). For the following reasons, the Court determines that Defendants' alleged actions do not fall within the safe harbor provision.

The indictment charges Defendants with having violating the Anti–Kickback Statute which states as follows:

> Whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe or rebate) directly or indirectly, overtly or covertly in cash or in kind to any person to induce such person . . . (B) to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program, . . . shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both.

42 U.S.C. § 1320a–7b(b)(2)(B). Under this section, the term "remuneration" includes "any kickback, bribe or rebate," *id.*, or "transfers of items or services for free or for other than fair market value." 42 U.S.C. § 1320a–7a(i)(6).

However, the HHS has set forth several safe harbor provisions that carve out exceptions to the Anti–Kickback Statute's reach. The first relevant safe harbor provision (which Defendants invoke) is the "discount" safe harbor. While there are multiple characteristics a transaction must have to qualify for this safe harbor provision, only two need be discussed here. First, there must be a "discount" which means "a reduction in the amount a buyer . . . is charged for an item or service based on an arms-length transaction." 42 C.F.R. § 1001.952(h)(5). Second, the seller must comply with the disclosure requirements by "fully and accurately report[ing] such discount on the invoice, coupon or statement submitted to the buyer." 42 C.F.R. § 1001.952(h)(2)(ii)(A); 42 C.F.R. § 1001.952(h)(2)(iii)(B).[5] The Office of the Inspector General's (OIG) 1999 preamble dropped the requirement of including the notation "net discount" and now requires only that "the value of the discount be accurately reflected in the actual purchase price ." 64 Fed.Reg. at 63,527.

Defendants argue that "the factual allegations of the Indictment demonstrate that the documentation provided by the Defendants accurately reflected the price actually paid for the enteral products purchased by SMD" (Doc. 27, p. 16–17). According to Defendants, the invoices reflected SMD's actual payment for products since SMD had to pay a $5 rental to receive a corresponding discount on enteral products.

The Court determines that Defendants cannot properly invoke the discount safe harbor provision with regard to the transactions for the enteral pumps. The problem with Defendants' position is that while they can show either (1) a "discount" or (2) a full and accurate report of the transaction, they cannot show *both* as required by the discount safe harbor provision.[6] First,

---

**5.** Defendants cite to § 1001.952(h)(2)(iii)(B) in their motion (Doc. 27. p. 15). While it is unclear to the Court which cited provision actually applies, this problem is irrelevant since the subsections are identical with regard to the requirement of actual disclosure.

**6.** There also appears to be some confusion as to whether each of Defendants' transactions with SMD should be assessed based on the invoice as a whole (which includes the sales and leases of different items) or based on the individual items within each invoice dependent on the type of product and the manner in which it is provided. For purposes of the Anti–Kickback violations, the Court determines that the proper inquiry requires an analysis of the individual items within each invoice dependent on the type of product and

assuming *arguendo* that the $5 rental fee for the enteral pumps represented the "actual" transaction for the enteral pumps, then the discount safe harbor would be inapplicable to the enteral pumps since the transaction would have been a lease rather than a sale and the definition of "discount" does not apply to leases. 42 C.F.R. § 1001.952(h)(5). Under this scenario, Defendants would have to show that they complied with the "equipment rental" safe harbor provision, 42 C.F.R. § 1001.952(c), which they do not do (and probably could not). Second, assuming *arguendo* that Defendants provided SMD with a "discount" on the enteral pumps by giving them to SMD for $0, then Defendants cannot show the discount was fully and accurately reported.[7] According to Defendants, the invoice stated that SMD was to pay a $5 rental fee which obviously was inaccurate if SMD in fact paid $0. In such a case, Defendants are not covered by the discount safe harbor provision since they cannot show that they "fully and accurately report such discount on the invoice ..." 42 C.F.R. § 1001.952(h)(2)(ii)(A); 42 C.F.R. § 1001.952(h)(2)(iii)(B).

the manner in which it is provided. First, the alleged free provision of enteral pumps is, according to the indictment, the only item that constitutes a kickback. Each transaction as a whole is relevant only for purposes of showing how Defendants attempted to cover-up the illegal kickback of free enteral pumps, which is necessary for the fraud and conspiracy to defraud charges. Second, Defendants' attempted application of the discount safe harbor provision to the whole invoice (that includes both sales and leases) is wholly inconsistent with the framework of the safe harbor provisions. Different safe harbor provisions have been established depending on how and what type of item is being transferred. e.g., space rentals, equipment rentals, warranties, discounts, etc. 42 C.F.R. § 1001.952. It would be logically inconsistent

### 3. Is the Discount Safe Harbor Provision Violative of Due Process Because of Vagueness

Defendants argue that their "reasonable" interpretation of the discount safe harbor provision (discussed above) that shows they are protected from the Anti-Kickback Statute logically proves that the discount safe harbor provision is necessarily vague and therefore violative of due process.

Courts have interpreted the Fifth Amendment's "due process" provision as requiring criminal statutes to provide "fair warning" of what actions are proscribed. The Supreme Court stated in *United States v. Lanier* the three related manifestations of the fair warning requirement:

> First, the vagueness doctrine bars enforcement of a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." Second, ... the canon of strict construction of criminal statutes, or rule or lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to

with the structure of the safe harbor provisions to try to fit both a *lease* (such as that of the enteral pumps) and a *discounted sale* (such as that of the other enteral products) into a single safe harbor provision simply because they were transferred on a single invoice. Clearly, only the safe harbor provision applying to equipment rentals, 42 C.F.R. § 1001.952(c), can protect what is ostensibly a lease of enteral pumps, and only the safe harbor provision applying to discounts, 42 C.F.R. § 1001.952(h), can protect a discounted sale of other enteral products.

7. The Court does not address the issue of whether the discount safe harbor provision is applicable to a transaction where medical equipment is given for free.

apply it only to conduct covered. Third, ... due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope.

*United States v. Lanier,* 520 U.S. 259, 266, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) (citations omitted); *see also United States v. Balint,* 201 F.3d 928, 934 (7th Cir.2000). For all three forms of the rule, the main issue is "whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Lanier,* 520 U.S. at 267, 117 S.Ct. 1219. In addition, the due process rule against vagueness prevents prosecution for a crime if safe harbor provisions incorrectly state that impermissible action is permissible. *See United States v. Pennsylvania Industrial Chemical Corp.,* 411 U.S. 655, 674, 93 S.Ct. 1804, 36 L.Ed.2d 567 (1973); *see also Gentile v. State Bar of Nevada,* 501 U.S. 1030, 1049, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991).

The Court determines that Defendants' interpretation of the discount safe harbor provision is not reasonable and therefore does not demonstrate the vagueness of the provision. As shown above, the logical flaw in Defendants' interpretation and application of the discount safe harbor provision to their circumstances is that they cannot show that there was both a discount as well as a full and accurate reporting of the transaction. Consequently, Defendants have not given a reasonable interpretation of the provision that shows they are protected. Since Defendants rely only on their interpretation of the discount safe harbor provisions being reasonable to show vagueness, the Court concludes that the discount safe harbor provision is not vague as applied to Defendants.

### 4. *Could Defendants Have Formed the Requisite Intent to Violate the Anti–Kickback Statute.*

Defendants argue that to violate the Anti–Kickback statute a defendant must have knowledge that his actions violate the anti-kickback statute and do not fall into the safe harbor provisions. Defendants state:

> Given that the safe harbor regulations protect the conduct described in the Indictment, it is impossible, as a matter of law, for the Government to prove that the Defendants acted with knowledge of the specific legal duty not to participate in that type of transaction or with an intent to violate that duty. The Seventh Circuit recognizes that the Government cannot prove willfulness when the law fails to provide fair warning that the conduct at issue was criminal.

(Doc. 27, p. 22). This argument by Defendants relies on the Court determining that either (1) the discount safe harbor provision protects Defendants or (2) the safe harbor provisions violate due process because of vagueness.

Because the Court has determined that Defendants are not protected by the discount safe harbor provision and that the provision does not violate due process, the Court concludes that the Government is not precluded as a matter of law from proving that Defendants had actual knowledge of their duties under the Anti–Kickback statute. Since the Court has determined only that Defendants are logically foreclosed from succeeding in this argument, the Court makes no conclusion on whether a violation of the Anti–Kickback Statute requires knowledge of the duty not to violate the statute.

**5. Does the Indictment Actually Allege a Crime of Fraud (Counts III–X) or Conspiracy to Engage in Fraud (Count I).**

■ Defendants argue the indictment does not allege a crime for fraud (Counts III–X) or a conspiracy to engage in fraud (Count I) (Doc. 27, p. 6–11). Specifically, Defendants claim that Medicare Part B reimbursement is not based on the reported cost of medical supplies but rather on the "reasonable charge" methodology that reimburses a medical supplies buyer 80% of what Medicare has determined to be a reasonable charge (Doc. 27, p. 7–11). Therefore, Defendants argue it is impossible that their alleged misrepresentations could have defrauded Medicare.

The Court determines that Defendants' alleged actions of misrepresenting its price for enteral pumps may constitute a material fraud on Medicare. The indictment alleges that Defendants knew Medicare conducted audits of purchasing records apparently for the purpose of uncovering improper activities, such as illegal kickbacks. The indictment further alleges that Defendants attempted to help SMD overcome any appearances of improper activity by altering receipts to show SMD paid something for pumps rather than nothing. Since their actions may have assisted SMD in hiding improper activities, such as illegal kickbacks, Defendants may have committed a material fraud on Medicare.

**6. Does the Indictment Properly Allege a Crime of Mail Fraud by Including that Medicare was Deprived of a Property Right.**

■ Defendants argue the indictment is invalid under RULE 7(c)(1) with regard to the mail fraud counts because it fails to allege the necessary element of depriving a victim of a property right (Doc. 27, p. 22–25). The Government counters that Medicare has been deprived of a property right

because the Defendants' violation of the Anti–Kickback statute would have precluded the possibility of a Medicare reimbursement. In reply, Defendants argue that the Anti–Kickback statute does not apply to them because they fall in the safe harbor provisions.

The Court determines the indictment has satisfactorily alleged a deprivation of a property right for its mail fraud claims. The Defendants have relied on the fact that the Court will determine that the Anti–Kickback statute does not apply to them. However, as stated above, the Court has determined that the Anti–Kickback statute does apply to Defendants and that they are not protected by any safe harbor provision (see above).

**7. Does the Indictment Apprise Defendants of the Charges Against Them with Reasonable Certainty.**

Defendants argue that the indictment does not fairly apprise them of the charges against them since it uses such terms as "including" and "such as" in describing the victims, participants, and types of remuneration. Defendants' cite the following as instances where the indictment is unclear:

1) "Defendants herein, conspired ... to defraud and mislead the United States, *including* the Department of Health and Human Services" (Indictment ¶ 11)(emphasis added);

2) "It was the purpose and object of the conspiracy ... to unlawfully enrich themselves by defrauding Medicare through inducing customers, *including* SMD, to sign long term contracts ..." (Indictment ¶ 12)(emphasis added);

3) Defendants' effected their conspiracy to defraud by giving "substantial inducements, bribes, and kickbacks, *such as* free (no cost) enteral feeding pumps" (Indictment ¶ 12)(emphasis added); and

4) With regard to illegal remuneration, "Defendants remuneration *included* the provision of approximately 95 enteral pumps to SMD" (Indictment ¶ 44)(emphasis added).

Defendants argue that the indictment's use of the italicized words above fails to apprise them with sufficient information to allow them to prepare a defense with regard to other possible victims, participants, and remunerations. Consequently, Defendants request the Court either (1) to dismiss the indictment or (2) to strike the italicized words under RULE 7(d).

 First, the Court determines that the indictment should not be dismissed. The due process clause "requires that an indictment provide a defendant with notice of the charge against them and a description of the offense so as to prevent further prosecution for the same offense." *U.S. v. Ocampo*, 890 F.2d 1363, 1373 (7th Cir.1989)(quoting *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974)). In addition, FEDERAL RULE OF CRIMINAL PROCEDURE 7(c)(1) requires an indictment to contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged ..." To satisfy both due process and RULE 7(c)(1), "an indictment must state all the elements of the offense charged, inform the defendant of the nature of the charge so that he may prepare a defense, and enable the defendant to plead the judgment as a bar to any later prosecution for the same offense." *Ocampo*, 890 F.2d at 1373. In determining whether a particular charge provides sufficient notice, a court must " 'consider the challenged count as a whole and should refrain from reading it in a hypertechnical manner.' " *Id.* (quoting *United States v.*

*Gironda*, 758 F.2d 1201, 1209 (7th Cir. 1985)). In this case, the Government's indictment sufficiently apprises Defendants of the charges against them. Defendants rely on a hypertechnical reading of the indictment in arguing that the terms "including," "included," and "such as" allow for the possibility that Defendants may be convicted based on events unrelated to SMD and the provision of free pumps. While Defendants may be correct in a strictly technical sense, the only reasonable understanding of each charge taken as a whole is that Defendants have been charged only with regard to those events relating to SMD and the provision of enteral pumps. This is most recognizable from the fact that the only events specifically mentioned throughout the eighteen page indictment are those regarding SMD and the provision of free pumps. Consequently, Defendants hypertechnical interpretations of the terms "including," "included," and "such as" do not warrant a dismissal of the entire indictment that clearly seeks conviction only for the events relating to SMD and the provision of enteral pumps.[8]

 Second, the Court determines in its discretion that the terms "including," "included," and "such as" should not be stricken. FEDERAL RULE OF CRIMINAL PROCEDURE 7(d) states "the court may strike surplusage from the indictment or information." The Court has discretion to strike surplusage from the indictment if the Court finds the language to be immaterial, irrelevant, or prejudicial. *United States v. Marshall*, 985 F.2d 901, 905–06 (7th Cir.1993). The prevalent standard among district courts is an exacting one that allows language to be stricken only if

8. Of course, while Defendants may be convicted only of the events relating to SMD and the provision of free pumps, this does not preclude the Government from proffering evidence of other events that is admissible under the FEDERAL RULES OF EVIDENCE to prove the elements of the crime.

it is clearly not legally relevant. *See United States v. Andrews,* 749 F.Supp. 1517, 1518 (N.D.Ill.1990); *United States v. Chaverra–Cardona,* 667 F.Supp. 609, 611 (N.D.Ill.1987). The Court adopts the standard set forth by other district courts since it would be unwise to exclude prematurely material that may be relevant. In this case, while Defendants cannot be convicted based on other instances of similar misconduct (see above), it is not clear that those other instances are legally irrelevant in proving the counts relating to fraud and kickbacks. Therefore, the Court will not strike the terms "including," "included," and "such as" from the indictment.

## IV. CONCLUSION

For the above reasons, the Court **DENIES** Defendants' joint motion to dismiss Counts I–X of the indictment. First, the extensive expert materials submitted by Defendants cannot be considered to the extent they assert facts outside of the indictment and constitute only non-authoritative, *ad hoc* reference materials with regard to their legal analyses. Second, Defendants' actions do not fall within the discount safe harbor and therefore are not protected from the Anti–Kickback statute. Third, Defendants have not asserted a "reasonable" interpretation of the discount safe harbor that logically proves the discount safe harbor violates of due process based on vagueness. Fourth, the Government is not precluded, as a matter of law, from proving that Defendants had actual knowledge that they were violating the Anti–Kickback Statute. Fifth, the indictment sufficiently lays out a crime of fraud and conspiracy to defraud since Defendants may have made a material misrepresentation. Sixth, the indictment properly alleges a crime of mail fraud since Defendants may have defrauded Medicare of a property right. Finally, the indictment sufficiently apprises Defendants of the charges against them, and no portion of it need be struck.

**IT IS SO ORDERED.**